0UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
MICHAEL WALES,
                                    :
                Plaintiff,          :      REPORT & RECOMMENDATION
                                    :
            -against-               :      06 Civ. 13684 (GEL)(MHD)
                                    :
THE CITY OF NEW YORK, et al.,
                                    :
                Defendants.         :
------------------------------x

TO THE HONORABLE GERARD E. LYNCH, U.S.D.J.:


    Plaintiff Michael Wales is a former inmate in the Robert N.
Davoren Center ("RNDC") at the Rikers Island prison complex.[1] He
has filed this pro se lawsuit, under 42 U.S.C. §§ 1983 and 1985,
against the City of New York and six officials of the Department of
Correction ("DOC"), contending that defendants denied him a proper
Halal diet, as required by the tenets of his Muslim faith, and in
doing so deprived him of his First and Fourteenth Amendment right
to the free exercise of his religion.[2]


    The individual defendants include the Head Cook and Supervisor
of Food Services (identified as Brathwaite), the Correction Captain

---

[1] Plaintiff is currently confined in a New York State
correctional facility.

[2] Plaintiff invokes the Equal Protection Clause as a basis
for relief. Defendants do not explicitly address this alternative
ground in their motion. But see pp. 12-14, infra (discussing 42
U.S.C. § 1985).

of Food Services (identified as Maxwell), the Chief of the facility (identified as Thomas), DOC Commissioner Martin Horn, Warden Fidel Gonzales and Grievance Coordinator James Robinson. They and the City have moved to dismiss the complaint in its entirety on a variety of grounds. They contend that plaintiff fails to state a claim because the complaint demonstrates that he did not exhaust his prison grievance remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a); that plaintiff lacks standing to assert his claims; that his complaint is defective because he does not allege the personal responsibility of the individual defendants for the wrongs about which he complains; that the individual defendants are entitled to a qualified-immunity defense; and that plaintiff fails to state a claim under 42 U.S.C. § 1985.

A. <u>The Plaintiff's Complaint</u>

This lawsuit is one of more than twenty cases filed more or less contemporaneously by current or former Muslim inmates at the Rikers Island prison facilities. Those other inmates all complain about the handling of food and related items at the prison dining facilities and commissaries. In substance they all assert that the New York City Department of Correction ("DOC") has failed to provide them with meals that comply with the Halal requirements of their faith, and have thereby denied them the free exercise of

their religion, in violation of their First and Fourteenth Amendment rights.

These lawsuits were originally filed pro se, and hence their factual allegations lacked precision, although, fairly construed, it was apparent that they were all complaining of essentially the same practices. In the case of Mr. Wales, his allegations are notably abbreviated, but seem consistent with the claims of the other inmate plaintiffs in targeting certain practices in the prison dining facility. Thus, he states that he "requested to be provide[d] with a[] [d]iet that is [c]onsistent with my religious [s]cr[u]ples[,] [a] NON-CROSS -CONTAMINATED/NON PORK DIET, which I wasn't." (Compl. ¶ II(D)). He refers to the failure of the prison to serve Halal meals on disposable trays, as required by a DOC directive for both Halal and Kosher meals, and asserts that "there is no way NYC DOC [] [c]an [c]laim that they are provid[ing] . . . a[] Halal Meal if the [t]rays [w]e are eating from [a]re contam[i]nated [or] [c]ross-[c]ontaminated with [p]ork." (Id.). In addition, he appears to say that the dining facility serves meat from pots and pans marked Halal even though the meat is in fact not Halal. (Id. at attached page).[3]

--------

[3] Unlike the other plaintiffs, Wales does not complain that defendants failed to post a list of pork products at the prison commissary.

Wales further states that he filed a grievance with the prison concerning the failure to serve proper Halal meals, and that he received no response. He represents that he then pursued the matter by sending letters to the Warden, the Commissioner, the various levels of DOC grievance review (including the Inmate Grievance Review Committee ("IGRC") and the Central Office Review Committee ("CORC")), as well as to defendants Captain Maxwell, Head Cook and Food Services Supervisor Brathwaite, and Grievance Coordinator Robinson. According to plaintiff, he again received no response to his written complaints. (Id. at ¶¶ IV(E)-(I)).

We read plaintiff's allegations liberally in deference to his pro se status, e.g., Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994), as well as because defendants seek dismissal under Rule 12(b)(6). E.g., Achtman v. Kirby, McInerney & Squire, LLC, 464 F.3d 328, 337 (2d Cir. 2006). We infer that he is asserting the same claims, and in substance making the same allegations, as the more articulate pro se plaintiffs concerning practices in this Rikers dining facility.[4] Moreover, we read his pleading in light of the far more specific allegations made by the one plaintiff among this group who subsequently obtained representation by pro bono counsel

---

[4] Indeed, we note that among the eyewitnesses identified by plaintiff is Michael Donnel Wesley, who is also a plaintiff in one of the parallel cases. (See Compl. at ¶ II(D)).

-- a set of allegations that are described in <u>Wesley v. Muhammad</u>, 2008 WL 123812 (S.D.N.Y. Jan. 10, 2008).

As explained in <u>Wesley</u>, the principal claims in these cases concern the alleged failure of the prison facilities to adhere to Islamic religious tenets in food preparation and cleanup. These failings, which assertedly also violate a DOC directive, involve stacking and washing together trays that are used to serve Halal and non-Halal meals, thereby contaminating the trays reserved for Halal food[5]; washing trays with soap that contains pork by-products; use of cooking ingredients with pork by-products; and failure to cook Halal meats thoroughly, as required by Halal rules. <u>Id.</u> at *1, 11. <u>See also</u> <u>Randolph v. City of New York Dep't of Correction</u>, 2007 WL 2660282, *2 (S.D.N.Y. Sept. 7, 2007).[6]

---

[5] According to the Wesley complaint, the DOC dining facilities color-code the trays, with one color designating trays for Halal food and another for non-Halal food. <u>Wesley</u>, 2008 WL 123812 at *1. This separation is apparently done to avoid what would otherwise be possible contamination of the Halal food if it were placed on trays that have previously been used to carry non-Halal food. The color-coding also identifies to serving personnel whether the inmate wants Halal food.

[6] Wesley, and the other inmate plaintiffs -- though not Wales -- also complain that the Rikers prison commissaries sell both Halal and non-Halal food products without identifying which products are in fact non-Halal, a failing that, according to Wesley, leads to Muslim inmates unknowingly purchasing non-Halal food products at the commissary and then placing those foods on the dining hall food trays that are reserved for Halal foods, thereby contaminating those trays for those inmates and for all subsequent observant inmates who use the same trays. <u>Wesley</u>, 2008 WL 23812 at *1, 5.

As for the role of the individual defendants in this case, plaintiff does not explicitly allege that these defendants directed the use of these practices, but he does allege in his complaint that he informed all of the defendants of the problems he specifies in his pleading, and that they ignored his complaints. (Compl. ¶ IV(G)(1)). He also asserts that the grievance coordinator was included as a defendant because he refused to file plaintiff's grievance and refused to respond further to plaintiff. (Id. ¶ II(D) at attached page).

B. Defendants' Motion

Defendants press five grounds for dismissal of the complaint, all predicated on what defendants contend are fatal deficiencies in that pleading.[7] First, they assert that the complaint fails to state a claim because its allegations reflect that plaintiff did not exhaust his prison grievance remedies. Second, they argue that plaintiff lacks standing to assert his claims. Third, they claim the his complaint does not adequately allege the personal participation of defendant Chief Thomas in the wrongdoing about

_____

[7] As is the case in the parallel lawsuits by other Rikers Island inmates, the only evidence proffered by defendants is a copy of the DOC regulations that govern the procedures for filing and pursuing inmate grievances. (See Decl. of Asst. Corp. Counsel Kimberly Conway, executed May 11, 2007 at Ex. A).

which he is complaining. Fourth, they assert that they are all protected from liability by a qualified-immunity defense. Fifth, they urge that the allegations of the complaint do not state a claim under 42 U.S.C. § 1985.

Plaintiff has not responded to defendants' motion.

<u>ANALYSIS</u>

We address defendants' arguments in the order in which they make them. Because most of these arguments repeat in large measure the analysis that these and other defendants have made in a number of previously decided dismissal motions in parallel Rikers Island cases,[8] we will shorten our discussion, incorporating by reference or citation the assessments that we have made of these arguments in the earlier decisions.

A. <u>Exhaustion</u>

In plaintiff's complaint he alleges that he attempted to utilize the prison grievance system to air the claims that he makes here. He also says that the grievance coordinator refused to file

---

[8] Defendants here are represented by the same counsel as in the other cases.

the grievance, and that he never received a response to it. He further alleges that he followed up with letters to the IGRC, the CORC, the Head Cook and Supervisor of Food Services, the Correction Captain of Food Services, the warden of the facility and the DOC Commissioner, apparently reiterating his complaints to each of them, and that none ever responded to him. These allegations are consistent with the assertions of the plaintiffs in the parallel cases whose exhaustion status has also been challenged by defendants and adjudicated by this court.

The short answer to defendants' exhaustion argument, as we have previously observed, is that a plaintiff is not obliged to allege his compliance with the exhaustion requirements of the Prison Litigation Reform Act, and that it is the defendants' burden both to plead this affirmative defense and to prove its applicability. The somewhat longer answer is that in any event (a) the allegations in Wales's complaint to which defendants seem to point as the basis for their argument do not clearly demonstrate that plaintiff failed to comply with the exhaustion requirement, and (b) if he complied incompletely, the complaint does not preclude the application of one or more of the exceptions to complete exhaustion recognized by the Second Circuit (if, for example, corrections personnel prevented or interfered with an inmate's efforts to exhaust his remedies or simply ignored his

grievance). <u>See</u>, <u>e.g.</u>, <u>Abney v. McGinnis</u>, 380 F.3d 663, 667 (2d Cir. 2004). For further details of this analysis, we incorporate by reference our discussion of these issues found in <u>Wesley v. Muhammad</u>, 2008 WL 123812 at *3-4; <u>Randolph v. City of New York Dep't of Correction</u>, 2007 WL 2660282 at *4-9; and <u>Robinson v. New York City Dep't of Correction</u>, 06 Civ. 945 (GEL), Report & Recommendation at 5-17 (S.D.N.Y. March 6, 2007).


    B. <u>Plaintiff's Standing</u>


    Defendants next argue that plaintiff lacks standing to assert his claims. The stated basis for this argument is defendants' contention that plaintiff fails to allege "that he sustained a personal injury." (Def.'s Mem. of Law at 12). This argument is truly mystifying. Plaintiff alleges that the defendants do not serve proper Halal meals because of contamination of the food by virtue of kitchen practices concerning the trays as well as the service of non-Halal meats labeled as Halal. These allegations obviously suffice to allege that plaintiff has been denied the ability to eat proper Halal meals, which is a right guaranteed to him under the First Amendment. <u>See</u>, <u>e.g.</u>, <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972); <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 203 (2d Cir. 2003); <u>Ford v. McGuinnis</u>, 352 F.3d 582, 597 (2d Cir. 2003); <u>Benjamin v. Coughlin</u>, 905 F.2d 571, 579 (2d Cir. 1990); <u>Kahane v.</u>

Carlson, 527 F.2d 492, 495-96 (2d Cir. 1975)).

## C. The Involvement of Defendant Chief Thomas

Defendants' third argument focuses on only one of their number, Facility Chief Thomas. They argue that the complaint fails to allege his personal participation in the wrongdoing about which Wales is complaining.

As we have noted in earlier decisions, a plaintiff is required to plead and prove the involvement of each individually named defendant in the constitutional torts for which he seeks relief. See, e.g., Randolph, 2007 WL 2660282, at *10 (citing inter alia Iqbal v. Hasty, 490 F.3d 143, 152-53 (2d Cir. 2007); Hendricks v. Coughlin, 114 F.3d 390, 394 (2d Cir. 1997)). As for Chief Thomas, although plaintiff does not state that he wrote him a letter, he does state that he informed him of his grievance. (Compl. ¶ IV(G)(1)). In addition, he alleges that all of the defendants, including Chief Thomas, "[r]efuse[d] to serve [m]e [m]y [m]eal[]s on the disposa[ble] [t]rays[.] Their [p]olicy and [p]ractice of serving [m]e [m]y Halal [m]eal[]s on [pre]wash[ed] [p]lastic [t]rays is a[] [v]iolation [of] my First Amendment [rights], and [m]y [r]eligious [d]ietary [l]aws." (Compl. ¶ II(D)). In view of plaintiff's pro se status, we must read these allegations with some

10

liberality, and they may fairly be interpreted as asserting that Chief Thomas was personally involved in the determination not to use disposable trays, which would presumably have obviated at least the contamination problems implicated in the washing of trays reserved for Halal meals. Under the circumstances, and given the fairly minimal requirements of Fed. R. Civ. P. 8(a), <u>see</u>, <u>e.g.</u>, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511-15 (2002); <u>Kassner v. 2nd Ave. Delicatessen, Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007), we conclude that the complaint adequately alleges the personal responsibility of Chief Thomas for the wrongdoing at issue in this case.

D. <u>Immunity</u>

Defendants next seek to invoke a qualified-immunity defense on behalf of all of the defendants, and in doing so rely solely on the allegations of the complaint. Having looked to the pleadings in the parallel <u>Randolph</u> and <u>Wesley</u> cases for clarification as to Wales's intended allegations, we conclude that the immunity defense cannot be invoked based solely on the pleadings.

The individual defendants all seem to occupy supervisory positions. As noted in both <u>Randolph</u> and <u>Wesley</u>, settled Supreme Court and Second Circuit precedent and the defendants' presumptive

11

knowledge of Muslim dietary requirements should have made clear to the Commissioner, the Warden and the other senior prison personnel that cooking Halal foods with pork-based products, failing to cook Halal meats thoroughly, stacking and washing Halal and non-Halal trays together and using pork-based soap to wash Halal trays violated the religious tenets of Muslim inmates and therefore violated their right to the free exercise of their religion. See Randolph, 2007 WL 2660282 at *14-16; Wesley, 2008 WL 123812 at *9-12.[9]

E. Section 1985

        Defendants' last challenge is an attack on plaintiff's invocation of 42 U.S.C. § 1985 as a basis for relief. This argument does not seek to challenge his citation of 42 U.S.C. § 1983.

_____

[9] The defendants also allude to the existence of the DOC directive mentioned by plaintiff, which lays out various requirements to comply with Halal rules in preparing and serving meals, and they seek to argue that the individual defendants could reasonably have believed that it was not so mandatory as to trigger a due-process right in Muslim inmates. (Def.'s Mem. of Law at 16-17). The short answer to this contention is that plaintiff is not asserting a due-process claim based on that directive; rather, its principal significance is that it suggests the knowledge or constructive knowledge by the defendants of the religious requirements that the prison was required to comply with under the Free-Exercise Clause of the First Amendment. See Randolph, 2007 WL 2660282 at *16 n.18.

To state a claim under section 1985(3), which we infer that plaintiff is seeking to invoke, he must allege "(1) a conspiracy, (2) for the purpose of depriving any person or class of persons of equal protection of the laws . . . (3) an act in furtherance of the conspiracy . . . (4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen." Iqbal, 490 F.3d at 176 (citing United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)). "In addition, the conspiracy must be motivated by some class-based animus." Id. Defendants contend, in an unilluminating one-sentence argument, that the complaint fails under this standard because plaintiff does not allege any class-based animus. (Def.' Mem. of Law at 17).

In view of defendants' narrow-gauged challenge to this claim, we assume for present purposes that plaintiff satisfies the other requisites for pleading a section 1985 claim (including the existence of a conspiracy). As defendants point out, an allegation that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action" is required to state a claim under section 1985(3). Leblanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995). Courts in this circuit have repeatedly held that allegations of religious animus satisfy that requirement. Iqbal, 490 F.3d at 177; Leblanc-

13

Sternberg, 67 F.3d at 427; <u>Jews for Jesus, Inc. v. Jewish Cmty.</u>
<u>Relations Council of N.Y., Inc.</u>, 968 F.2d 286, 291 (2d Cir. 1992).[10]
As for whether plaintiff pleads such animus, we again revert to the
point that he is an untutored <u>pro</u> <u>se</u> litigant whose allegations
must be read with some flexibility. In any event he points out that
the DOC directive requiring the use of disposable trays extends to
both Halal and Kosher meals, and plaintiffs in a number of the
parallel cases have observed that the prison does comply with that
directive for Jewish inmates. <u>See</u>, <u>e.g.</u>, <u>Robinson</u>, 06 Civ. 945
(GEL), R&R at 2, 19, 25. From these allegations of fact, we may
infer that the defendants' alleged refusal to comply with both the
directive and the Halal requirements that are embodied in it while
obeying it for Jewish inmates may be attributable to animus based
on religion. That should suffice as a matter of pleading to
safeguard plaintiff's section 1985 claim.[11]

---

[10] Other jurisdictions have held otherwise. <u>E.g.</u>, <u>World of</u>
<u>Faith Word Outreach Ctr. Church, Inc. v. Sawyer</u>, 90 F.3d 118, 124
(5th Cir. 1996); <u>Kinniburgh v. Burlington N. R.R. Co.</u>, 568 F.
Supp. 655, 656-57 (D. Mont. 1983).

[11] Plaintiff's claim may, however, be barred by the
application of the intra-corporate conspiracy doctrine, which
holds that "two or more employees of a corporate entity are
generally legally incapable of conspiring with each other with
respect to matters within the scope of their employment[.]" <u>Scott</u>
<u>v. Goord</u>, 2004 WL 2403853 at *13 (S.D.N.Y. Oct. 27, 2004); <u>see</u>
<u>also</u> <u>Malone v. City of N.Y.</u>, 2006 WL 2524197 at *11 (E.D.N.Y.
Aug. 30, 2006). Since defendants do not raise that doctrine, we
decline to decide its applicability at this juncture.

CONCLUSION

For the reasons noted, we recommend that defendants' motion to dismiss the complaint be denied.


Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Gerard E. Lynch, Room 910, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

15

Dated: **New York, New York**
       **February 25, 2008**

**Respectfully submitted,**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed
today to:

Mr. Michael Wales
# 05-A-1723
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871-2000

Kimberly Conway, Esq.
Assistant Corporation Counsel
   for the City of New York
100 Church Street
New York, New York 10007

16